UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALFRED DISESSA, | * |
| | * |
| Plaintiff, | * |
| v. | *   Civil Action No. 1:18-cv-11024-IT |
| | * |
| COMMONWEALTH OF | * |
| MASSACHUSETTS, | * |
| ALVIN LAROCHE, | * |
| TIMOTHY O'TOOLE, | * |
| CHRISTOPHER DEVENEAU, | * |
| MICHAEL THOMAS, | * |
| KELLY RYAN, | * |
| CAROL HIGGINS O'BRIEN, | * |
| and | * |
| CERTAIN JOHN AND JANE DOES, | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER

March 10, 2020

TALWANI, D.J.

Plaintiff Alfred Disessa alleges that he was mistreated while incarcerated in the Massachusetts Correctional Institution at Shirley, Massachusetts ("MCI-Shirley").[1] Disessa asserts various federal and state claims against Defendants Commonwealth of Massachusetts ("Commonwealth") and Alvin Laroche, Timothy O'Toole, Christopher Deveneau, Michael Thomas, Kelly Ryan, and Carol Higgins O'Brien, in their individual and official capacity.[2]

Pending before the court is Defendants' Motion to Dismiss [#32]. For the following

---

[1] Plaintiff filed his Complaint [#1] pro se and filed a second suit, Disessa v. Comm. of Mass., No. 1:18-cv-11393 (D. Mass., filed Aug. 2, 2018), through counsel. The court consolidated the actions and directed the clerk to refile the complaint from the second action as an amended complaint here. Elec. Order [#30]; Am. Complaint [#31].

[2] The Amended Complaint [#31] also names "Certain John and Jane Does."

reasons, Defendants' Motion to Dismiss [#32] is ALLOWED IN PART and DENIED IN PART.

## I. Factual Allegations as Alleged in the Amended Complaint

Plaintiff alleges the following:

At all relevant times, Disessa was incarcerated at MCI-Shirley. Am. Compl. ¶ 11 [#31]. Laroche, O'Toole, Deveneau, and Thomas were corrections officers and Ryan was the Superintendent at MCI-Shirley. Id. ¶¶ 3-7. Higgins O'Brien was the Commissioner of the Department of Corrections. Id. ¶ 8.

On July 2, 2015, O'Toole brought Disessa to a cell to be strip-searched based on a suspicion that he had stored medication in his mouth. Id. ¶¶ 11-13. Laroche assisted with the strip search. Id. ¶ 15. During the search, O'Toole grabbed Disessa by the neck and choked him, causing injury. Id. ¶ 16. After Disessa was stripped naked, Laroche twisted Plaintiff's testicles and said, "see how you like this." Id. ¶ 17. Laroche also repeatedly elbowed Disessa in the kidney, causing further injury. Id. ¶ 18. Deveneau observed the strip search and did not intervene. Id. ¶ 19. Upon Disessa's request, Deveneau took pictures of Disessa's neck but refused to take pictures of his testicles. Id. ¶¶ 20-21.

Laroche and O'Toole then shackled Disessa while he was still naked. Id. ¶ 25. Disessa overheard Laroche say he was going to "bury" Disessa. Id. ¶ 26.

On the day of the incident, Disessa's urine contained blood, which continued for several weeks. Id. ¶¶ 34-35. Disessa also complained of lower back pain, kidney pain, and groin pain for several months after the incident. Id. ¶ 37.

Following the incident, Disessa was placed on a suicide watch for four or five days, resulting in solitary confinement without clothing in a glass-walled cell. Id. ¶ 28. Laroche, as a lieutenant with supervisory duties in the medical unit, wrongfully authorized Disessa's suicide

watch. Id. ¶ 30. Disessa repeatedly requested medical attention for his injuries but was not seen by a doctor until four days later on July 6, 2015. Id. ¶ 33.

Laroche and O'Toole falsely accused Disessa of assault and battery. Id. ¶¶ 22-24. Based on the officer's false allegations, Plaintiff was placed in segregated confinement after he was removed from suicide watch and he remained in segregated confinement for at least one year. Id. ¶¶ 31-32.

Disessa filed grievances against Laroche, O'Toole, and Deveneau. Id. ¶ 39. Thomas reviewed the grievances and recommended that no action be taken and Ryan accepted the recommendation. Id.

Disessa was arraigned in state district court on assault and battery charges on November 25, 2015. Id. ¶ 40. Disessa was acquitted of the charges on April 11, 2017. Id. ¶ 41.

## II. Standard of Review

A motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim is properly allowed when the complaint does not contain "grounds of his entitlement to relief [consisting of] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and that "allow the court to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court accepts as true well-pleaded facts in the complaint and draws all reasonable inferences for the non-movant. Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). Generally, a court may not consider any documents that are outside of the complaint. Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

## III. Discussion

Plaintiff brings claims under 42 U.S.C. § 1983, alleging (1) a violation of the Eighth Amendment by all individual defendants for the use of excessive force ("Excessive Force claim"); (2) a violation of the Fourth Amendment by all individual defendants for the strip search and for placement on suicide watch and in segregated confinement ("Search and Seizure claim"),[3] and (3) a violation of the Fourth, Fourteenth and First Amendments under a theory of supervisory liability by Ryan and Higgins O'Brien and by the Commonwealth[4] ("Supervisory Liability claim"). Plaintiff also alleges (4) a violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and 11I, by Laroche, O'Toole, and Deveneau for the use of threats and intimidation ("MCRA claim"); and brings state law claims[5] for (5) assault and battery against Laroche and O'Toole, (6) false imprisonment against all individual defendants, (7) malicious prosecution against all individual defendants, and (8) civil conspiracy against all individual defendants.

---

[3] In Plaintiff's Amended Complaint [#31], Claim 1 alleges a violation of 42 U.S.C. § 1983 through the use of excessive force and Claim 2 alleges a violation of 42 U.S.C. § 1983 through the alleged strip search and confinement conditions. Am. Complaint ¶¶ 52-81. He also brings Claim 3 for violations of the Fourth Amendment for illegal search and seizure, id. ¶¶ 82-95 and Claim 4 for violations of the Eighth Amendment. Id. ¶¶ 96-108. As § 1983 provides a cause of action for alleged constitutional violation, Gomez v. Toledo, 446 U.S. 635, 638 (1980), the court treats these first four claims as two § 1983 claims.

[4] Plaintiff named the Commonwealth in its caption of the complaint, but listed MCI-Shirley in the complaint. MRI-Shirley is a facility run by the Department of Corrections. A claim against a state agency, such as the Department of Corrections, is appropriately considered a claim against the state. Woodbridge v. Worcester State Hosp., 384 Mass. 38, 38-39 n.3 (1981).

[5] The court infers that these claims are brought under state common law because Plaintiff uses the language of state tort law (for example, claiming damages for physical pain and suffering). See Smith v. Mass. Dep't of Corr'n, 936 F.2d 1390, 1402 (1st Cir. 1991) (looking at plaintiff's word choice and intent to determine whether a claim for malicious prosecution was brought under § 1983 or under state common law).

4

A. Claims against the Commonwealth and Individual Defendants in their Official Capacity

Plaintiff's claim under 42 U.S.C. § 1983 against the Commonwealth alleges constitutional violations related to "deliberately indifferent policies, practices, customs, training and supervision" and seeks damages and declaratory and injunctive relief. Am. Compl. ¶¶ 138-139 [#31].

A suit against a state is barred by the Eleventh Amendment unless the state has consented to the suit. Alabama v. Pugh, 438 U.S. 781, 782 (1978); Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Commonwealth has not consented to suits brought pursuant to 42 U.S.C. § 1983 for damages or prospective injunctive relief. Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009). In addition, declaratory relief should only be granted as a matter of judicial discretion exercised in the public interest. Knight v. Mills, 836 F.2d 659, 669 (1st Cir. 1987).

Plaintiff argues that the claim should proceed under Monell v. N.Y. Dept. of Social Servs., 436 U.S. 658 (1978). Monell held that a local government or municipality may be sued under 42 U.S.C. § 1983 when its policy or custom inflicts the injury at issue. Id. at 694. Monell, however, does not extend to states. Quern v. Jordan, 440 U.S. 332, 338-39 (1979). Accordingly, as the Commonwealth retains sovereign immunity and because Disessa has not offered allegations necessitating declaratory relief, his claim against the Commonwealth is dismissed.

Plaintiff also asserts § 1983 claims against the individual plaintiffs in their "professional capacity." Am. Compl. ¶¶ 3-8 [#31]. However sovereign immunity precludes holding individual defendants liable in their official capacity for damages for alleged constitutional violations pursuant to 42 U.S.C. § 1983. Hafer v. Melo, 502 U.S. 21, 25-28 (1991); accord Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991). Accordingly, Defendants' motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983 for monetary relief against the individual Defendants in their official capacity is allowed.

5

B. Claim against Carol Higgins O'Brien

Plaintiff concedes that he does not have a viable claim against Higgins O'Brien. Pl.'s Mem. in Opp'n to Mot. to Dismiss 4 n.1 [#34]. Accordingly, the motion to dismiss is allowed as to Higgins O'Brien.

C. Service of Process under Fed. R. Civ. P. 4

Defendants seek dismissal of the action pursuant to Fed. R. Civ. P. 4 for insufficient service of process. Defendants' Mem. of Law in Support of Mot. to Dismiss ("Defs. Mem.") 3-4 [#33]. The Process Receipts returned by the United States Marshals Service and by a private process server show that service was attempted at MCI-Shirley on August 15, 2018, in the pro se action and September 26, 2018, in the counseled action. See Return of Summons [##16-18]; Process Receipt and Return, Disessa v. Comm. of Mass., 18-cv-11393 (D. Mass., filed Aug. 2, 2018) [##5-10]. Defendants argue that at the time of attempted service, the Defendants no longer worked at that specific facility. Defs. Mem. at 4 [#33].

At a hearing, Defendants' counsel agreed to waive service for Defendants who were employed by the Department of Corrections ("DOC") at the time of attempted service.[6] Deveneau, Thomas, and Laroche worked for DOC on the dates of attempted service. Snow Aff. ¶ 5 (Defendants' Notice) [#42-1]. Thus, the service of process argument is waived for these three Defendants.

---

[6] The court strongly endorses this waiver, and notes that the attempt to avoid service on DOC's current employees who have moved to a different facility from where service was attempted may lead to plaintiffs serving DOC employees at their home addresses, a result DOC and its employees may prefer to avoid. Unnecessary burdens in effecting service is also of concern where the court has approved service by the United States Marshals Service, with all costs advanced by the United States.

6

O'Toole left DOC employment in January 2018 and Ryan left DOC employment in November 2016. Snow Aff. ¶¶ 3-4 (Defendants' Notice) [#42-1]. The court finds that these Defendants were not properly served through process left with their former employer, and that Plaintiff has not shown cause for the failure to properly effect service. Fed. R. Civ. P. 4(e), (m). Accordingly, the motion to dismiss is granted without prejudice as to these two Defendants. See Fed. R. Civ. P. 4(m).

D. Remaining Claims

The court turns to the claims brought against Laroche, Thomas, and Deveneau in their individual capacity.[7]

1. Excessive Force Claim

Plaintiff's Excessive Force claim brought under 42 U.S.C. §1983 alleges that Laroche Thomas, and Deveneau violated Plaintiff's constitutional rights through unnecessary violence which caused harm during the strip search. Am. Compl. ¶¶ 52-67, 96-108 [#31].

a. Deliberate or Wanton Use of Force

In order to prevail on an Eighth Amendment claim of excessive force, a plaintiff must show the defendant 1) used force maliciously and sadistically for the very purpose of causing harm and 2) the use of force resulted in "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The court's core inquiry is to determine the "nature of the force" and determine whether that force is alleged to have been carried out "maliciously and sadistically." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). "What matters here is whether a jury could reasonably find that [plaintiff] was harmed through deliberate or wanton force." Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005).

---

[7] Defendants have not challenged Plaintiff's claim of assault and battery against Laroche on the motion to dismiss. The claim remains pending and is not addressed further here.

7

The claim cannot be maintained against Defendant Thomas as Thomas was not present for the strip search and Plaintiff does not allege Thomas participated in the use of force. Plaintiff also did not include Thomas in his Supervisory Liability claim and so may not, based on the complaint, further a theory of liability for excessive force based on Thomas' supervisory role.

However, Plaintiff has stated a claim against Defendant Laroche. Plaintiff alleges that Laroche twisted Plaintiff's testicles while saying "see how you like this," Am. Compl. ¶ 17 [#31], and that Laroche elbowed Plaintiff repeatedly in the kidney. Id. ¶ 18. Plaintiff further alleges that these acts caused physical injury, resulting in blood in his urine, and back, kidney, and groin pain. Id. ¶¶ 34-35, 37. Taking these allegations as true, Plaintiff has stated a claim as to Laroche based on deliberate or wanton use of force.

Plaintiff has also stated a claim against Defendant Deveneau. Disessa alleges that Deveneau observed the strip search and the use of excessive force by Laroche and did not intervene. Id. ¶ 19. While "mere presence at the scene," without an allegation that the officer participated in the application of force, "does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer," Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006), a "bystander-officer who has a realistic opportunity to prevent the use of excessive force by a fellow officer may in certain circumstances be held liable for a failure to intervene." Id. at 428 n.3. As Plaintiff has alleged that Deveneau was present for the alleged use of wanton excessive force and did not intervene, Plaintiff has stated a claim against Deveneau.

      b. Prison Litigation Reform Act

Defendants argue that even if Plaintiff has sufficiently alleged a claim under Supreme Court precedent against the officers, Section 1997e(e) of the Prison Litigation Reform Act ("PLRA") forecloses Plaintiff's claim because he does not allege more than a de minimis

8

physical injury. See 42 U.S.C. § 1997e(e) (stating that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act"). The First Circuit has not determined whether the PLRA requires a showing of more than a *de minimis* injury. However, even assuming that the PLRA requires more than a *de minimis* injury, Plaintiff has alleged non-*de minimis* injuries to his back, kidneys, and groin. Therefore, dismissal is not warranted on this ground.

c. Qualified Immunity

Defendants also assert a defense of qualified immunity. In order to survive a qualified immunity defense offered in a motion to dismiss, a plaintiff must allege sufficient facts that plausibly show 1) a violation of a constitutional right, and 2) that the right was clearly established at the time of the alleged violation. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). The right must have sufficiently clear contours so that a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights. Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987). Although "there need not be a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." Eves v. LePage, 927 F.3d 575, 583 (1st Cir. 2019) (quoting in part Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

Plaintiff has alleged a violation of his constitutional right to be free from the infliction of pain through unnecessary and wanton excessive force and has adequately pleaded that the officers, directly or through the failure to intervene, violated that right. Whitley v. Albers, 475 U.S. 312, 319 (1986). A reasonable official should have understood that the alleged conduct – twisting Plaintiff's testicles while taunting him, and elbowing Plaintiff in the kidney where unwarranted by the facts – violated Disessa's constitutional right. See Morelli v. Webster, 552

9

F.3d 12, 24 (1st Cir. 2009) ("qualified immunity protection [is not] available when the level of force chosen by the officer cannot in any way, shape, or form be justified under [the] facts"). Similarly, Deveneau is not entitled to qualified immunity because the duty to intervene to prevent unnecessary and wanton excessive force by another officer is clearly established. Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 55 (1st Cir. 2005). Accordingly, dismissal due to qualified immunity is unwarranted at this stage as to the claim against Laroche and Deveneau.

2. Search and Seizure claim

Plaintiff also asserts a § 1983 claim against Laroche, Thomas, and Deveneau based on the strip search and the subsequent placement of Plaintiff on suicide watch and then in segregated confinement for a year. Am. Compl. ¶¶ 68-95 [#31].

Insofar as Disessa bases his claim on the choice to perform a strip search, the court finds dismissal for qualified immunity is merited. Disessa states the officers based their search on a belief that Disessa had contraband in his mouth. Id. ¶ 12. The Supreme Court has stated that courts must consider whether the scope of the search was reasonable under the circumstances, balancing a prisoner's limited right to privacy with the legitimate need for security protocols in prisons. Bell v. Wolfish, 441 U.S. 520, 559-560 (1979). In this instance, Plaintiff states that the officers suspected Plaintiff possessed contraband and so the choice to perform a strip search, as opposed to another type of search, was not unreasonable.[8]

Plaintiff's Search and Seizure claim also includes allegations that his confinement conditions on suicide watch and in isolated confinement for a year violated his constitutional rights. Am. Compl. ¶ 73, 75, 103 [#31].

---

[8] Insofar as Plaintiff asserts in this claim violations of the Fourth Amendment through the alleged use of excessive force, Am. Compl. ¶ 90 [#31], the alleged conduct is more properly analyzed under the Eighth Amendment. See Maraj v. Massachusetts, 836 F.Supp. 2d 17, 27-28 (D. Mass. 2011) (explaining that alleged excessive force by prison guards against a prisoner is appropriately analyzed under the Eighth Amendment, not the Fourth Amendment).

"Convicted prisoners . . . retain constitutional rights despite their incarceration," Roberts v. State of R.I., 239 F.3d 107, 109 (1st Cir. 2001), and the Eighth Amendment forbids conditions of confinement which are "grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). In order, therefore, to maintain a claim of unconstitutional confinement conditions, a plaintiff must plausibly allege that the chosen prison punishment was "extremely disproportionate, arbitrary or unnecessary." O'Brien v. Moriarty, 489 F.2d 941, 944 (1st Cir. 1974). While placement in solitary confinement on its own is not a violation of the constitution, a prisoner's rights are violated if placement in solitary confinement is "[i]mposed inappropriately, or for too long a period." Id.; DuPonte v. Wall, 288 F.Supp. 3d 504, 513 (D. R.I. 2018) (finding that alleged solitary confinement for a year or more, without more, can be sufficient to maintain a § 1983 claim).

The confinement conditions claim fails as to Thomas and Deveneau, as Plaintiff has not asserted that Thomas' denial of Plaintiff's grievance was connected in any way to Plaintiff's placement on suicide watch or in segregated confinement and it is not clear from the complaint whether the grievance was filed before, during, or after his segregated confinement. Similarly, Plaintiff has not asserted that Deveneau was involved in these confinement decisions or that his actions led to their implementation.

Plaintiff however has alleged Laroche caused Plaintiff's confinement on suicide watch and in segregation through false accusations. Defendants first argue that the claim as to Laroche should be dismissed because the decision to place Disessa on suicide watch was made by health services staff and not by Laroche. Defs.' Mem. in Support of Mot. to Dismiss 5 [#33]. However, at this stage, the court must take Disessa's alleged facts as true and he has alleged that Laroche wrongfully authorized his placement on suicide watch. Am. Compl. ¶ 30 [#31].

Defendants also raise a qualified immunity defense. The defense again turns on whether, as alleged, the use of false accusations to place Disessa on suicide watch leading to his confinement for five days, and his subsequent placement in isolation for a year, violates a clearly established right protected by the constitution, and that Laroche, by engaging in this alleged conduct, did not act with objective reasonableness. Penate v. Hanchett, 944 F.3d 358, 366 (1st Cir. 2019). In addition, though courts should generally decide questions of qualified immunity early in litigation if possible, a court may deny a motion to dismiss on qualified immunity grounds if the record needs to be developed to answer the relevant legal questions. Irish v. Maine, 849 F.3d 521, 523 (1st Cir. 2017).

Qualified immunity is not warranted here when taking Plaintiff's allegations as true. Plaintiff has alleged that he was placed on suicide watch and in solitary confinement for a year based on false allegations from Laroche. These allegations state a claim for a constitutional violation under First Circuit law. O'Brien, 489 F.2d at 944. In addition, based on the clearly established law from the First Circuit, a reasonable officer would have known that the imposition of a year of solitary confinement without reason and based on false allegations would violate Plaintiff's rights. Therefore, dismissal of the claim as to Laroche is not merited at this stage.

    3. Massachusetts Civil Rights Act Claim

In order to maintain his claim that Laroche and Deveneau violated the Massachusetts Civil Rights Act (MCRA), Plaintiff must state facts showing that Defendants interfered "by threats, intimidation, or coercion" with his exercise or enjoyment "of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the commonwealth." M.G.L. c. 12, §§ 11(H), 11(I).

Coercion can be physical or verbal, including the use of violence to make someone do something against his will. Ayasil v. Armstrong. 56 Mass. App. Ct. 740, 750 (2002). However,

there is no coercion within the meaning of this statute, "simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action." Longval v. Comm'r of Corr., 404 Mass. 325, 333 (1989). Instead, to be actionable, those threats, intimidation or coercion must amount to "an attempt to force someone to do something the person is not lawfully required to do." Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565 (1995); see Farrah v. Gondella, 725 F.Supp. 2d 238, 248 (D. Mass. 2010) (Plaintiff "has pled a violation of [the arrestee's] Fourth Amendment right to be free from excessive force. What is absent, however, is any showing (or even pleading) that the violation was intended to coerce [him] into refraining from the exercise of a right or privilege secured by law").

Plaintiff claims that Laroche and Deveneau used threats to violate his rights under both the federal and Massachusetts constitutions, namely the right to be free from unreasonable use of force, the right to be free from unreasonable deprivation of liberty, and the right to be free from illegal searches. Am. Compl. ¶¶ 109-123 [#31]. However, Plaintiff does not allege facts to support the allegation that Deveneau threatened, intimidated, or coerced him in any way. In addition, while Plaintiff alleges that Laroche threatened him verbally and through the application of physical force, he does not allege how this conduct was intended to coerce him into refraining from the exercise of a right. Longval, 404 Mass. at 333. Plaintiff therefore has not alleged sufficient facts to maintain his claim and the claim is therefore dismissed.

4. False Imprisonment Claim

Plaintiff's claim that his placement on suicide watch and in segregated confinement amounts to false imprisonment requires allegations that plausibly show "an intentional and unlawful confinement of a person . . . of which the person confined is conscious or is harmed by

13

such confinement." Jonielunas v. City of Worcester Police Dep't, 338 F.Supp. 2d 173, 177 (D. Mass. 2004).

Defendants contend that Plaintiff cannot maintain his false imprisonment claim because 1) the decision to place Plaintiff in a mental health cell on suicide watch was made by mental health practitioners,[9] not by Defendants, and 2) the court cannot review Plaintiff's placement in segregation. Defs. Mem. in Support of Mot. to Dismiss 14-15 [#33].

Plaintiff has alleged that the decision to place Plaintiff on suicide watch and into segregated confinement was made by Laroche. Am. Compl. ¶¶ 28-32 [#31]. Since the court must take the complaint's well-pleaded allegations as true on a motion to dismiss, Defendants' argument that the decisions were in fact made by health practitioners are unavailing at this stage.

As to their second argument, Defendants are correct that correctional officers receive broad deference for establishing policies and practices to preserve internal order in the facility. Bell v. Wolfish, 441 U.S. 520, 547 (1979). However, as previously discussed, a prisoner does not lose all rights while incarcerated. If correctional officers place a prisoner on suicide watch or in segregated confinement as an arbitrary or retaliatory punishment, a court can review the practice and find a violation of law. O'Brien, 489 F.2d at 944; LaChance v. Comm. of Corr., 463 Mass. 767, 776-77 (2012). Here, Plaintiff states that he was placed on suicide watch because Laroche wrongfully authorized such confinement and he was put into segregated confinement for a year due to Laroche's false accusations. Am. Compl. ¶¶ 30-31 [#31]. At this stage of litigation, therefore, Plaintiff has alleged sufficient facts, taken as true, to maintain his claim of false imprisonment against Laroche.

---

[9] Defendants submitted MCI-Shirley's Mental Health Services Policy. However, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may generally only consider the complaint and documents incorporated therein. Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

As previously discussed, however, Plaintiff has not alleged that either Thomas or Deveneau were involved in his segregated confinement. Therefore, the claim is dismissed as to Thomas and Deveneau.

5. Malicious Prosecution Claim

Plaintiff's malicious prosecution claim is brought against all individual defendants. In order to make out a claim for malicious prosecution, a plaintiff must show 1) the institution of criminal process against the plaintiff with malice; 2) without probable cause; and 3) the termination of the prosecution in favor of the plaintiff. Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 405 (2002) (internal citation and quotation marks omitted). The malice element requires that the defendant knew there was no probable cause for the commencement of the action and that the defendant acted with an improper motive. Beecy v. Pucciarelli, 387 Mass. 589, 593 (1982). Defendants may be answerable for malicious prosecution if they "intentionally induced" the prosecutors to wrongfully prosecute the plaintiff and the prosecutor did so while "acting in good faith on the defendant's information." Correllas v. Viveiros, 410 Mass. 314, 318 (1991) (quoting Tangney v. Sullivan, 163 Mass. 166, 167 (1895)).

Plaintiff alleges that the assault and battery accusations brought by Laroche were knowingly false and that the allegations formed the basis of his prosecution. Am. Compl. ¶ 22 [#31]. In addition, Disessa states he was acquitted in the subsequent trial. Id. ¶ 41. Taking Disessa's allegations as true, as the court must at this stage, his allegations plausibly meet each element of a malicious prosecution claim. Accordingly, dismissal of the claim as it applies to Laroche is not warranted at this time. However, the claim contains no allegations that Thomas or Deveneau were involved in bringing assault and battery allegations against Disessa or otherwise induced his prosecution. As such, the claim against Thomas and Deveneau is dismissed.

15

6. Civil Conspiracy Claim

Plaintiff's final claim asserts civil conspiracy against all individual defendants, alleging specifically that Defendants "acted in concert to accomplish the unlawful purpose of falsely incarcerating and prosecuting" Plaintiff. Am. Compl. ¶ 158 [#31]. Plaintiff also alleges that the other defendants, along with "John and Jane Does employees . . . utilized their administrative power over [Plaintiff] to cause [Plaintiff] damage and harm." Id. ¶ 159.

There are two types of civil conspiracy in Massachusetts: 1) a form of vicarious liability for the tortious conduct of others; or 2) an allegation that defendants, by acting in unison, had a "peculiar power of coercion" over plaintiff that they would not have had if acting independently. Snyder v. Collura, 812 F.3d 46, 52 (1st Cir. 2016). If the party does not specify, the court looks to how plaintiff phrases his allegations. Id. Where, as here, the party alleges that the conspiracy was enacted to carry out a tort, the allegation falls under the first category. Id. at 52-53. In order to maintain a claim under this category of civil conspiracy, a party must 1) allege an underlying tort; and 2) allege sufficient facts to show either a) concert of action or b) substantial assistance or aiding and abetting. Taylor v. Am. Chemistry Council, 576 F.3d 16, 35 (1st Cir. 2009). Concert of action requires a showing of 1) an agreement, explicit or inferred from conduct, to perform the act, and that 2) defendant's own conduct was tortious. Payton v. Abbott Labs, 512 F.Supp. 1031, 1035 (D. Mass. 1981).

Plaintiff's allegations plausibly meet these elements as to Laroche. Plaintiff alleges that Laroche and others (including the unnamed John and Jane Doe employees) acted in concert to achieve torts of false imprisonment and malicious prosecution. Am. Compl. ¶ 158 [#31].

However, Plaintiff has not offered any additional allegations to sustain his claim against Deveneau or Thomas. He does not include allegations that Deveneau acted in any way to assist

16

Laroche or others in allegedly bringing false allegations against Plaintiff, or that Deveneau was involved in having Disessa placed on suicide watch or in solitary confinement.

Similarly, Plaintiff has not alleged, beyond his conclusory statement, that Thomas' use of his "administrative power" in denying Disessa's grievance was part of a concert of action or that it was connected with an underlying tort. As such, the claim against Deveneau and Thomas must be dismissed.

## IV. Conclusion

Accordingly, for the previously discussed reasons,

1. Defendants' Motion to Dismiss [#32] is ALLOWED with prejudice as to all claims against the Commonwealth and Defendants Higgins O'Brien and Thomas.

2. Defendants' Motion to Dismiss [#32] is ALLOWED without prejudice as to all claims against Defendants O'Toole and Ryan.

3. Defendants' Motion to Dismiss [#32] is ALLOWED as to the MCRA claim and DENIED as to the Excessive Force claim, the Search and Seizure claim, the False Imprisonment claim, the Malicious Prosecution claim, and the Civil Conspiracy Claim as to Laroche.

4. Defendants' Motion to Dismiss [#32] is DENIED as to the Excessive Force claim and ALLOWED as to all other claims against Deveneau.

IT IS SO ORDERED.

March 10, 2020                                     /s/ Indira Talwani
                                                   United States District Judge